**MIDWEST PROPERTY RECOVERY, INC., Appellant,**

v.

**JOB SERVICE OF NORTH DAKOTA, Appellee.**

Civ. No. 910094.

Supreme Court of North Dakota.

Oct. 7, 1991.

---

Carpenter Offices, Bismarck, for appellant, argued by Deborah J. Carpenter, Bismarck.

Mary Norum Hoberg, Asst. Atty. Gen., Bismarck, for appellee.

ERICKSTAD, Chief Justice.

Midwest Property Recovery, Inc., appealed from the judgment of the District Court for Burleigh County affirming the decision of Job Service of North Dakota determining that service in employment was performed for Midwest Property Recovery, Inc., as defined by section 52–01–01(17)(e), N.D.C.C. We affirm.

Job Service of North Dakota began an investigation into whether or not Midwest Property Recovery, Inc., was liable for unemployment insurance taxes for persons doing repossession work for Midwest. Midwest is engaged in the business of repossessing automobiles and other vehicles for various lending institutions. Apparently, a lending institution needing to repossess a vehicle would contact Midwest who

would then forward the request to a person in the area where the vehicle was located. The person contacted would then repossess the vehicle and report to Midwest for instructions as to the disposition of the vehicle. The person who repossessed the vehicle was paid a flat rate for recovery of a vehicle unless the repossession took longer than an hour, in which case the person was paid an additional amount per hour. The person who repossessed the vehicle was also reimbursed for certain expenses such as fax transmissions and gasoline.

On August 27, 1990, Job Service held a hearing over the telephone to determine whether or not Midwest was an employer as defined by section 52–01–01(15), N.D.C.C., and whether or not the services performed for Midwest constituted employment as defined by section 52–01–01(17)(e), N.D.C.C. Job Service determined, on September 21, 1990, that Midwest was an employer and that the services performed for Midwest constituted employment. Midwest first appealed the decision within Job

Service. On October 18, 1990, Job Service affirmed its prior determination. Midwest then appealed to the District Court for Burleigh County where the district court affirmed the decision of Job Service. This appeal followed.

█ When an administrative agency decision is appealed to this Court from a district court, we review the decision of the agency and not that of the district court. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815, 817 (N.D.1986).[1] We limit our review to the record before the agency and do not consider the findings of the district court. *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739, 743 (N.D.1980).

█ Sections 28–32–21 and 28–32–19, N.D.C.C., set forth the scope and procedure for this Court's review of administrative decisions or orders.[2] We are required to affirm an administrative decision unless one of the six enumerated reasons listed in section 28–32–19 is found.[3] *In re Annexa-*

---

**1.** For a discussion of the principle of limited review of agency decisions see *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692, 696 (N.D.1979) and *Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau*, 171 N.W.2d 104 (N.D.1969).

**2.** The 1991 Legislative Assembly made a number of changes, to be effective July 1, 1991, in chapter 28–32 of the North Dakota Century Code. Section 28–32–19, N.D.C.C., was modified to the following extent:

"Scope of and procedure on appeal from determination of administrative agency. ~~The~~ A judge of the district court ~~shall try and hear~~ must review an appeal from the determination of an administrative agency ~~without a jury and the evidence considered by the court shall be confined to~~ based only on the record filed with the court. ~~If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court.~~ After ~~such~~ a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court ~~shall~~ must affirm the ~~decision~~ order of the agency unless it shall find that any of the following are present:
1. The ~~decision or determination~~ order is not in accordance with the law.

2. The ~~decision~~ order is in violation of the constitutional rights of the appellant.
3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions ~~and decision~~ of law and order of the agency are not supported by its findings of facts.
If the ~~decision~~ order of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the ~~decision~~ order of the court."
S.L.1991, ch. 342, § 26. Regardless of how we might interpret the relationship between section 28–32–19, N.D.C.C., and section 1–02–10, N.D.C.C., we note that the substantive basis for not affirming an administrative agency's decision or order is for the most part unchanged. Thus, it is immaterial what version of section 28–32–19, N.D.C.C., we apply in this case.

**3.** In the 1991 changes to chapter 28–32, N.D.C.C., a new section was added. Section 28–32–19.1 sets forth the scope and procedure on appeal from an administrative agency's rulemaking action. Suffice it is to say, that this case does not involve a direct challenge to an administrative agency's rulemaking action.

tion of a Part of Donnybrook Public School Dist. No. 24, 365 N.W.2d 514, 519 (N.D.1985). We have noted that our review of administrative decisions under section 28-32-19, N.D.C.C., essentially involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Tobias v. North Dakota Department of Human Services*, 448 N.W.2d 175, 178 (N.D.1989); *Falcon v. Williams County Social Service Board*, 430 N.W.2d 569, 571 (N.D.1988); *Otto v. Job Service North Dakota*, 390 N.W.2d 550 (N.D.1986).

■ This Court, in *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979), discussed at length the preponderance standard to be used in reviewing agency findings of fact. We have subsequently noted that in applying this standard "we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the evidence." *Tobias*, 448 N.W.2d at 178-179. This Court exercises restraint and will not act as a "super board" when reviewing administrative findings and decisions. *Matter of Boschee*, 347 N.W.2d 331, 335 (N.D.1984).

■ Although this Court will generally not consider new issues raised on appeal, *Illies v. Illies*, 462 N.W.2d 878, 881 (N.D.1990), we note that there have been some recent legislative changes to section 52-01-01(17)(e), N.D.C.C. Effective July 17, 1991, section 52-01-01(17)(e) was changed to incorporate the so-called "common law" test for when a contract for hire is to be deemed employment subject to the North Dakota Unemployment Compensation Law. The prior version of section 52-01-01(17)(e) incorporated what is often termed the "ABC" test.[4] Initially we note that this appeal was filed before the effective date of the latest legislation. It is significant that this Court, since 1979, has consistently adhered to the principle embodied in section 1-02-10, N.D.C.C., that no statutory enactment is retroactive unless it is expressly declared to be so. *Reiling v. Bhattacharyya*, 276 N.W.2d 237, 238 (N.D.1979) and *Gofor Oil, Inc. v. State*, 427 N.W.2d 104, 108 (N.D.1988). In *State v. Cummings*, 386 N.W.2d 468 (N.D.1986), we departed, for reasons not present in this case, from that principle because the statute in question involved an ameliorating amendment to a criminal statute. We thus created a narrow exception to the general rule for ameliorating penal legislation. *Id.* at 471, 472. Upon review, we find nothing in the new version of section 52-01-01(17)(e) which expresses a retroactive intent.[5]

**4.** The North Dakota Legislature has apparently switched back and forth between the "ABC" test and the "common law" or "right to control" test on a number of occasions. Donald Hertz speaking on the proposed changes to section 52-01-01(17)(e) before the Senate Committee on Industry, Business, and Labor said: "The North Dakota Statute used the ABC test from 1937 until 1963. From 1963 to 1985, Common Law test was used. In 1985, the law was changed back to the ABC test...." *See* Testimony on H.B. 1378 before the Senate Committee on Industry, Business, and Labor, Fifty-second Legislative Assembly of North Dakota (February 19, 1991).

**5.** The North Dakota Legislative Council's Committee on Administrative Rules, at its meeting on July 25, 1991, moved and passed an objection to North Dakota Administrative Code Section 27-02-14-01. This section of the Administrative Code is the Job Service rule promulgated to supposedly implement section 52-01-01(17),

N.D.C.C. Rule 27-02-14-01 became effective January 1, 1991, after the claim was filed in this case. The reasons given by the committee for the objection were as follows:

"1. Prior to the 1991 Legislative Session NDCC Section 52-01-01(17)(e) provided for the use of the ABC test to determine if an independent contractor was exempt for unemployment compensation purposes.

"2. House Bill No. 1378, adopted by the 1991 Legislative Assembly and effective July 17, 1991, replaced the ABC test with the common law test for determining independent contractor status.

"3. A representative of Job Service North Dakota testifying before the committee said the agency is in the process of revising North Dakota Administrative Code Section 27-02-14-01 to incorporate the new test. He said, however, Job Service North Dakota would apply the old rule to service performed prior to the effective date of the legislation and the

Thus this appeal will be tested under the former version of section 52–01–01(17)(e), N.D.C.C., which incorporated the so-called "ABC" test.

"new rule to service performed after the effective date.

"4. Adoption of House Bill No. 1378 clearly indicates the Legislative Assembly intends that the common law test, not the ABC test, be used to determine independent contractor status for unemployment compensation purposes and that it is unfair and contrary to legislative intent for Job Service North Dakota to apply the ABC test to cases in which the service was provided prior to the effective date of the legislation."

In essence, what the committee objects to is that Job Service North Dakota is not giving section 52–01–01(17)(e), N.D.C.C., retroactive effect.

Committee objections to administrative rules are pursuant to section 28–32–03.3, N.D.C.C. This section of the Code was modeled in part after an Iowa law and the Revised Model State Administrative Procedure Act (1980). *See* Report of the North Dakota Legislative Council, Forty-seventh Legislative Assembly, page 12 (1981); *see also* Iowa Code Ann. § 17A.4 (West 1989); *see also* Model State Administrative Procedure Act, 1981 Act (U.L.A.) § 3–204. The effect of an objection is that the "burden of persuasion is upon the agency in *any* action for judicial review or for enforcement of the rule to establish that the whole or portion thereof objected to is within the procedural and substantive authority delegated to the agency. [Emphasis added.]" Section 28–32–03.3(5), N.D.C.C. The reference to "any" judicial review might seem to make this reversed burden of persuasion mechanism applicable to this case.

The response from Job Service, dated August 23, 1991, states that "Job Service has consistently applied this law section on the basis of the time when the services were performed." That is consistent with our construction of 1–02–10, N.D.C.C., which reads:

"*1–02–10. Code not retroactive unless so declared.* No part of this code is retroactive unless it is expressly declared to be so."

Since at least 1979, and as expressed in *Reiling v. Bhattacharyya,* 276 N.W.2d 237, this Court has construed section 1–02–10, N.D.C.C., so that "[a]ll statutes enacted by the legislature are to be applied prospectively, *i.e.,* they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." Such construction, "supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that [it] ... is in accordance with the legislative intent." *Kline v. Landeis,* 147 N.W.2d 897, 902 (N.D.1967), quoting *Barringer v. Miele,* 6 N.J. 139, 77 A.2d 895, 897 (1951), quoting *Commissioner of Banking and Insurance v. Moresh,* 122 N.J.L. 77, 3 A.2d 638, 639 (1939). *See also* 2A Sutherland Statutory Construction § 45.12 (4th ed.) In light of our construction of 1–02–10, we find nothing in the most recent changes to section 52–01–01(17)(e) that indicate an expressed legislative intent that the changes be applied retroactively.

The complete version of the response of Job Service follows:

"This is in response to the objection which was filed by the Legislative Council's Administrative Rules Committee on August 9, 1991, concerning North Dakota Administrative Code Section 27–02–14–01.

"The purpose of Section 27–02–14–01 was to clarify the interpretation of the 'ABC Test' provided for in the North Dakota Unemployment Compensation Law at N.D.C.C. § 52–01–01(17)(e). As you know, the 'ABC Test' deals with exemption of 'services' from unemployment compensation coverage by independent contractors.

"The 'ABC Test' was placed into the law by the 1985 Legislative Assembly. Administrative Rule 27–02–14–01, defining the 'ABC Test' was adopted in response to a complaint received approximately two years ago concerning the lack of a rule for defining the 'ABC Test'. Public notice of the proposed adoption of Administrative Rule 27–02–14–01 was given in the ten major daily newspapers in North Dakota during the last two weeks of August 1990. A public hearing was held in Bismarck on September 20, 1990. On November 5, 1990 an Attorney General's Opinion was issued establishing the legality of Administrative Rule 27–02–14–01. This rule, defining the 'ABC Test' was then published in the North Dakota Administrative Code, becoming effective January 1, 1991.

"While House Bill No. 1378, changing the 'ABC Test' to the common law test, was enacted by the 1991 Legislative Assembly, it did not become effective until July 17, 1991. The history of Administrative Rule 27–02–14–01, set forth above, clearly indicates that this rule, defining the 'ABC Test' was promulgated and adopted prior to the enactment of House Bill No. 1378.

"N.D.C.C. § 52–01–01(17)(e) contains the very clear reference point of 'Services performed' for both the 'ABC Test' under prior law and for the common law test under current law, Job Service has consistently applied this law section on the basis of the time when the services were performed. This principle was followed in 1985 when the Legislature changed the test from the common law test to the 'ABC Test'.

"Consequently, Job Service maintains that it has acted correctly in applying the 'ABC Test' law and rule for cases where the 'services' were performed prior to July 17, 1991. Job Service is also implementing the provisions of House Bill No. 1378 correctly by applying it in all cases involving 'service performed' subsequent to the July 17, 1991, effective date.

"Based upon the foregoing it is respectfully requested that the Administrative Rules Committee withdraw its objection to North Dakota Administrative Code Section 27–02–14–01."

■ As both parties candidly admit, the issue of whether a worker is an independent contractor or an employee is a mixed question of law and fact. *See generally Lakeland Tool And Engineering, Inc. v. Engle*, 450 N.W.2d 349, 352 (Minn.App. 1990); *McGuire v. Department of Employment Security*, 768 P.2d 985, 987 (Utah App.1989). This was implicit in this Court's handling of similar appeals from Job Service determinations in such recent cases as *Schaefer v. Job Service North Dakota*, 463 N.W.2d 665 (N.D.1990), and *Speedway, Inc. v. Job Service North Dakota*, 454 N.W.2d 526 (N.D.1990). Put in terms of section 28–32–19, N.D.C.C., we separately inquire whether the order or decision is "not in accordance with the law"; whether "the findings of fact made by the agency are not supported by a preponderance of the evidence"; and, whether the conclusions of the agency "are not supported by its findings of fact."

The former version of section 52–01–01(17)(e), N.D.C.C., which is applicable to this case provides:

"Services performed by an individual for wages or under any contract of hire must be deemed to be employment subject to the North Dakota Unemployment Compensation Law unless and until it is shown that: (1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; (2) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of the enterprise for which such service is performed; and (3) such individual is customarily engaged in an independently established trade, occupation, profession, or business."

This statute is commonly referred to as the "ABC" test. Under this provision, a person who meets all three of the subparts is deemed an independent contractor for job insurance taxation purposes. The burden is, however, on the employer to establish all three prongs of the test. *Schaefer*, 463

N.W.2d at 666. If any one of the three is missing or not established by the employer, the person in question cannot be deemed an independent contractor.

■ Initially, it is important to recognize that the label the parties place on the relationship is not determinative. It is how the relationship between the parties actually operates which is important. *Ellison, Inc. v. Board of Review of the Industrial Commission of Utah, Department of Employment Security*, 749 P.2d 1280, 1284 (Utah App.1988). In this case, Midwest referred to its workers as independent contractors. Additionally, Greg Holte, a worker for Midwest, referred to himself as a "self-employed independent contractor." However, the label Midwest and workers such as Holte choose to attach to the workers is not important. The actual relationship between Midwest and workers such as Holte is what is at issue.

■ The first prong of the so-called "ABC" test deals with whether or not the person "has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact." Section 52–01–01(17)(e), N.D.C.C. As Job Service correctly noted, however, it is the *right* to control which is in issue. The mere fact that the employer has not exercised any control is not determinative.

In this case, Job Service made the determination that Midwest did retain the right to control the performance of services rendered to it. In support of this determination, Job Service stressed that Midwest set the fees to be paid to the persons doing the repossession work, and that the workers could be deprived of further work with Midwest without Midwest incurring any liability. Job Service also noted that after a vehicle was repossessed, the worker submitted a report and received instructions from Midwest on disposition of the vehicle. Lastly, Job Service asserted that the nature of the work performed by the workers was such an integral part of Midwest's business that for Midwest to maintain its standing with its clients it must have some

ability to control the individuals performing the repossession work.

Midwest argues, however, that Job Service failed to adequately take into account the fact that the various workers were free to accept or decline any repossession work made available to them. Midwest further argues that the only control ever mentioned over the manner in which the task was completed, was to not "breach the peace."

In deciding whether or not Job Service's determination is supported by a preponderance of the evidence, "we do not make independent findings of fact or substitute our judgment for that of the administrative decision-maker, but determine only whether a reasoning mind reasonably could have determined that the factual conclusions were proved by the weight of the evidence." *Schaefer*, 463 N.W.2d at 667. Upon review of the evidence before Job Service, we conclude that a reasoning mind could reasonably have determined that the greater weight of the evidence supported the conclusion that Midwest maintained some right to control the manner in which the services were performed for it.

The second prong of the "ABC" test requires that an employer establish that "such service is either outside the usual course of the business for which such service is performed *or* that such service is performed outside of all the places of the enterprise for which such service is performed. [Emphasis added.]" Section 52–01–01(17)(e), N.D.C.C. Clearly the services of repossessing vehicles fall within the usual course of Midwest's business. This determination of Job Service is not seriously challenged by Midwest. Rather, Midwest argues that Job Service did not address the latter option under the second prong. Essentially Midwest argues that the services of vehicle repossession are "performed outside of all the places of the enterprise for which such service is performed." Section 52–01–01(17)(e), N.D.C.C. We do not agree. Midwest is in the business of repossessing vehicles. The "places of the enterprise" necessarily extend to

where the repossessions take place. Other courts have reached similar conclusions. *In re Bargain Busters, Inc.*, 130 Vt. 112, 287 A.2d 554, 558–559 (1972); *Life & Casualty Ins. Co. of Tennessee v. Unemployment Compensation Commission of Virginia*, 178 Va. 46, 16 S.E.2d 357 (1941); see also *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399, 406 (Wyo.1985); *Redwine v. Wilkes*, 83 Ga.App. 645, 64 S.E.2d 101, 103 (1951). The Vermont Supreme Court put it this way: "An employer's place of business includes not only the location of its offices, but also *the entire area in which it conducts the business....* [Emphasis added.]" *Vermont Institute of Community Involvement, Inc. v. Department of Employment Security*, 140 Vt. 94, 436 A.2d 765, 767 (1981). In its "reason for decision" as to prong B, Job Service stated that, "In this case the service is both in the usual course of business *and performed in the places where the employing unit normally conducts its business.* [Emphasis added.]" This is in accordance with the law of section 52–01–01(17)(e), N.D.C.C., applicable to this case.

The third prong of the so-called "ABC" test requires that the employer demonstrate that the workers in question are "customarily engaged in an independently established trade, occupation, profession, or business." Section 52–01–01(17)(e), N.D.C.C. Job Service correctly noted in its "reasons for the determination" that to meet the third prong, it is not enough to show that the individuals are free to engage in similar activities for others or work as employees for others. *See generally Homes Consultant Co., Inc. v. Agsalud*, 2 Haw.App. 421, 633 P.2d 564, 568–569 (1981). In essence, Job Service apparently determined that Midwest had not met its burden under the third prong. As we noted above, the burden is on the employer to establish all of the prongs of the so-called "ABC" test. *Schaefer*, 463 N.W.2d at 666. If the employer fails to demonstrate the existence of any one of them, the contract

for hire will not be deemed one involving an independent contractor.

We conclude that Job Service's findings of fact are supported by the preponderance of the evidence, and that its conclusions of law are sustained by the findings of fact, and that its decision is supported by the conclusions of law. We thus affirm the judgment of the district court affirming the decision of Job Service.

VANDE WALLE, GIERKE, LEVINE and MESCHKE, JJ., concur.