Kevin TURNBOW, dba Nodak
Construction, Appellant,

v.

JOB SERVICE NORTH
DAKOTA, Appellee.

Civ. No. 910203.

Supreme Court of North Dakota.

Jan. 9, 1992.

Wefald Law Office, Ltd., Bismarck, for appellant; argued by Robert O. Wefald, Bismarck.

Atty. Gen.'s Office, Bismarck, for appellee; argued by Mary Norum Hoberg, Asst. Atty. Gen., Bismarck.

MESCHKE, Justice.

Job Service North Dakota ruled that Kevin Turnbow, doing business as Nodak Construction, was an employer in 1986, 1987, and 1988, and that certain services performed for Turnbow in those years were employment subject to unemployment compensation tax. Turnbow appealed, the district court affirmed, and Turnbow appealed to this court. We affirm.

Job Service began a proceeding to determine if payments made by Turnbow to certain workers were wages subject to job insurance taxes. Turnbow contended that

he had no employees, only independent contractors. Job Service held an evidentiary hearing. Job Service determined that services performed for Nodak by the individuals "were performed for wages" and that Nodak failed to show that those services were not employment. Job Service decided:

Kevin Turnbow, d/b/a Nodak Construction was an employer in 1986, 1987, and 1988. The service performed in 1986, 1987, and 1988 by the individuals listed in Exhibit 1, except Terry Heitzman, was employment subject to the North Dakota Unemployment Compensation Law. Due to the death of Terry Heitzman the details surrounding the circumstances of his relationship with Nodak Construction were unable to be determined.

Turnbow appealed to the district court. That court affirmed the Job Service decision. Turnbow appeals, raising these questions:

1. Whether the Findings of Fact are supported by a preponderance of the evidence, and the Conclusions and Decision made by JOB SERVICE are supported by the Findings of Fact.
2. Whether the failure of JOB SERVICE to fully comply with the provisions of NDCC Chapter 28–32 violated the constitutional rights of TURNBOW.

■ Ordinarily, a determination of an administrative agency is presumed to be correct. *Barnes County v. Garrison Diversion Conservancy Dist.*, 312 N.W.2d 20, 25

(N.D.1981). Our review is governed by NDCC 28–32–19.[1] Courts must affirm an administrative agency decision unless one of the six factors listed in NDCC 28–32–19 is present. *Matter of Annexation of Part of Donnybrook Pub. Sch. Dist. No. 24*, 365 N.W.2d 514 (N.D.1985). In reviewing an administrative order, "there are three critical questions: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law?" *Matter of Prettyman*, 410 N.W.2d 533, 536 (N.D.1987). Where the subject of an agency decision is a technical one, the expertise of the agency is entitled to respect. *Triangle Oilfield Services, Inc. v. Hagen*, 373 N.W.2d 413, 415 (N.D.1985). We determine only whether the agency reasonably made its factual determinations from the greater weight of all the evidence in the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). These principles guide our analysis of Job Service's decision here.

■ "[T]he public good and general welfare ... requires that for laboring people genuinely attached to the labor market there be a systematic and compulsory setting aside of financial reserves to be used as compensation for loss of wages during periods when they become unemployed through no fault of their own." NDCC 52–01–05. This public policy seeks to soften

---

1. NDCC 28–32–19 says:

*Scope of and procedure on appeal from determination of administrative agency.* A judge of the district court must review an appeal from the determination of an administrative agency based only on the record filed with the court. After a hearing, the filing of briefs, or other disposition of the matter as the judge may reasonably require, the court must affirm the order of the agency unless it shall find that any of the following are present:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.

If the order of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the order of the court.

Although NDCC 28–32–19 was amended effective July 1, 1991, the criteria for review have not been substantially altered so it is immaterial which version is applied here. *See Midwest Property Recovery, Inc. v. Job Service North Dakota*, 475 N.W.2d 918, 920 n. 2 (N.D.1991).

the harsh impact of involuntary unemployment on workers. *Newland v. Job Service North Dakota,* 460 N.W.2d 118, 121 (N.D. 1990). The North Dakota unemployment compensation law is construed liberally in favor of employees. *Schaefer v. Job Service North Dakota,* 463 N.W.2d 665 (N.D. 1990). This legislative policy steers agency decisions that apply unemployment compensation statutes.

NDCC 52–01–01(17)(e) directs:

Services performed by an individual for wages or under any contract of hire must be deemed to be employment subject to the North Dakota Unemployment Compensation Law unless and until it is shown that: (1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; (2) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of the enterprise for which such service is performed; and (3) such individual is customarily engaged in an independently established trade, occupation, profession, or business.

This is commonly called the "ABC Test." [2] *Speedway, Inc. v. Job Service North Dakota,* 454 N.W.2d 526, 528 (N.D.1990). A person who fits the "unless and until" criteria of NDCC 52–01–01(17)(e) is deemed an independent contractor rather than an employee, and payments to that person for services are exempt from job insurance taxation. *Schaefer; Speedway, Inc.* While "Job Service has the burden of proving that the worker's services were done for wages or under a contract for hire, the employer has the burden of establishing an exemption from unemployment compensation liability." *Schaefer,* 463 N.W.2d at 666–667. To do so, the employer must establish all three branches of the ABC Test. *Midwest Property Recovery, Inc. v. Job Service North Dakota,* 475 N.W.2d 918 (N.D.1991). If all three branches of the ABC Test are not established by the employer, the person's services "must be deemed to be employment" that is subject to unemployment compensation tax.

■ The term "wages" is defined as "all remuneration for service from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." NDCC 52–01–01(31). "The term 'contract of hire' is not defined under the statute." *Speedway, Inc.,* 454 N.W.2d at 528. That a worker is not paid a specific salary or other direct payment, but receives a share of a business's profits or the difference between a wholesale price and a purchase price, does not preclude job insurance taxation. *See Schaefer* and *Speedway, Inc.* Thus, any payment for services is deemed employment, until the employer proves all three branches of the ABC Test to show that the person furnishing the services is an independent contractor.

Job Service found:

In 1986, 1987, and 1988 Kevin Turnbow d/b/a Nodak Construction was a general contractor. Nodak Construction built houses and did remodeling.

Michael Odden, Terry Heitzman, Scott Norby, Tom Roberson, Mike Rose, Ron Allmendinger, Senger, and Dean Ahmann performed framing, finishing, remodeling, siding, and repair services for Nodak Construction. The working relationship between Nodak and Odden and Norby was substantially the same as between Nodak and the other workers.

\* \* \* \* \* \*

The workers were paid on a weekly basis.... The workers would submit statements to Nodak in order to receive payment.

Job Service concluded: "Services were performed on behalf of Nodak. Nodak did remunerate the workers for those services. Thus services were performed for wages." From our review of this record, we con-

---

**2.** NDCC 52–01–01(17)(e) was amended in 1991 to apply the "common law" test in determining if an individual is an independent contractor. For a brief history of the ABC and common law tests in North Dakota, *see Midwest Property Recovery, Inc. v. Job Service North Dakota,* 475 N.W.2d 918 (N.D.1991).

clude that Job Service reasonably made these factual determinations from the greater weight of all the evidence. *Power Fuels, Inc. v. Elkin.* Services were performed for Nodak, and Nodak paid the workers for their services. We conclude that Job Service proved that the worker's services were done for wages or under a contract for hire.

Turnbow argues that the finding that Roberson, Rose, Allmendinger, Senger, and Ahmann performed services for wages must be set aside because "no evidence was presented with respect to any individuals other than ODDEN, NORBY and HEITZMAN." However, Turnbow testified that the individuals "listed ... on the forms ... were all treated essentially the same" and that "if a decision was rendered it would be rendered as to the class of workers." That testimony supports Job Service's finding.

Job Service found: "These individuals [Odden and Norby] indicated they performed similar services for others, but this was never substantiated. Odden received at least more than half his income from Nodak. Norby received at least more than three fourths of his income from Nodak." Turnbow contends that the first sentence of that finding "is clearly wrong", arguing that Odden and Norby "testified that they performed similar services for others, and that testimony was not challenged by JOB SERVICE." Job Service concluded: "Except for the relationship with Nodak, they did not perform significant contracts with others." Turnbow contends that that conclusion "is simply not supported by a preponderance of the evidence." Turnbow testified about Odden, Norby, and Heitzman: "They didn't do a heck of a lot for other contractors, I know that because I've always had, I've never been, been out of work. I've always had jobs going all the time." On this evidence, Job Service made a reasonable finding.

We next review whether Turnbow met his burden of establishing an exemption from unemployment compensation taxation by establishing all three branches of the ABC Test. "[T]he issue of whether a worker is an independent contractor or an employee is a mixed question of law and fact." *Midwest Property Recovery, Inc.*, 475 N.W.2d at 923. The label placed on the relationship is not determinative. "It is how the relationship between the parties actually operates which is important." *Id.*, at 923. Job Service ruled that Turnbow did not establish the first and third branches of the ABC Test.

The first branch of the ABC Test requires Turnbow to establish that the person performing services "has been and will continue to be free from control or direction over the performance of such service." NDCC 52–01–01(17)(e)(1). "[I]t is the *right* to control which is in issue", even if "the employer has not exercised any control." *Midwest Property Recovery, Inc.*, 475 N.W.2d at 923. In its conclusions of law, Job Service stated: "Other factors bearing on the right to control include the furnishing of tools, control of the job site, and the method of payment. An important factor is the power of the alleged employer to end the relationship with the worker at will." (Citations omitted). We will normally defer to a reasonable interpretation placed on a statute by the agency responsible for enforcing it, especially when that interpretation does not contradict the statutory language. *Schaefer*, 463 N.W.2d at 667. Job Service's interpretation of NDCC 52–01–01(17)(e)(1) on this branch of the ABC Test is reasonable and does not contradict the statutory language.

Turnbow testified that he set completion deadlines for the persons to perform the work that they contracted to do for him; that a "lot of times I tell them, you know, that something ain't satisfactory, you're gonna have to take care of it or fix it or change it or something"; and that he sometimes had to do some finish work himself and "would subtract that off the contract." Job Service made findings consistent with that testimony and also determined:

The workers furnished their own tools, although Nodak might rent some equipment for their use. Turnbow provided a trailer at the job site with his business name on it for the workers to store their

tools. For advertising purposes he wanted to insure that his business name was associated with the job. Materials were provided by Nodak.

\*　　\*　　\*　　\*　　\*　　\*

Kevin Turnbow directed the workers. He traveled from job site to job site each day to supervise their work. He did not simply inspect the result of their work. He took action to correct the workers. When work wasn't being done to his satisfaction, he required the workers to make corrections.

\*　　\*　　\*　　\*　　\*　　\*

There is evidence that Nodak could terminate the relationship at will. Turnbow terminated the alleged contract on some occasions by completing jobs himself, and deducting the cost of his labor from the amount agreed to be paid to the workers.

Job Service concluded: "The evidence supports the conclusion that Nodak Construction had the right and did in fact direct and control the workers. The first test of N.D.C.C. § 52–01–01(17)(e) was not met." This factual determination was reasonably reached by the greater weight of all the evidence. Further, Job Service's conclusion of law that "[t]he first test of N.D.C.C. § 52–01–01(17)(e) was not met" is sustained by the findings of fact.

To be eligible for the independent-contractor status that exempts payments to a worker from job insurance taxation, the third branch of the ABC Test requires that the person providing services must be "customarily engaged in an independently established trade, occupation, profession, or business." NDCC 52–01–01(17)(e)(3). Because we uphold Job Service's findings and conclusion that Turnbow did not establish the first branch of the ABC Test, we need not review that part of Job Service's decision holding that the third branch of the ABC Test was not fulfilled.

■ Turnbow contends that Job Service violated his constitutional rights by failing to adopt rules explaining how it would interpret and apply the ABC Test of NDCC 52–01–01(17)(e). NDCC 28–32–02 autho-

rizes, but does not require, administrative agencies to adopt reasonable rules in conformity with the statutes they administer or enforce. Turnbow's contention is disposed of by *Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124, 133 (N.D.1987):

> It is settled that, as a general rule, an administrative agency is not required to promulgate detailed rules interpreting every statutory provision that may be relevant to its actions, or covering every conceivable situation which might come before it. Rather, an administrative agency may announce new principles though adjudicative proceedings in addition to rule-making proceedings.

(Citations omitted). In so ruling, we relied on *Securities and Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 202–203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), where the Supreme Court recognized that problems may arise which an administrative agency could not reasonably foresee; that an "agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule"; or that a problem may "be impossible of capture within the boundaries of a general rule." "[T]he choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Id. See also True v. Heitkamp,* 470 N.W.2d 582 (N.D.1991). Constitutionally, "judicial interpretations clarifying vague or ambiguous language may be taken into consideration in determining whether the public has been put on notice of the conduct proscribed." *State v. Schwalk,* 430 N.W.2d 317, 320 (N.D.1988). We conclude that Job Service was not required to promulgate detailed rules explaining how it would interpret and apply the ABC Test before determining whether payments made by a building contractor to workers performing building services are wages subject to job insurance taxation.

From our review of this record, we conclude that Job Service's findings of fact are supported by a preponderance of the evidence, its conclusions of law are sustained by the findings, and its decision is sup-

ported by the conclusions of law. Job Service is not required to adopt rules explaining how it interprets or applies the statutes that it administers and enforces before determining whether payments to certain workers are wages subject to job insurance taxation.

We affirm the decision by Job Service.

ERICKSTAD, C.J., and VANDE WALLE and LEVINE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.