In the Matter of BKU ENTERPRISES, INC.

BKU ENTERPRISES, INC., Appellant,

v.

JOB SERVICE NORTH DAKOTA, Appellee.

Civ. No. 930231.

Supreme Court of North Dakota.

March 11, 1994.

David F. Knutson of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for appellant.

Douglas A. Bahr, Asst. Atty. Gen., Atty. General's Office, Bismarck, for appellee.

SANDSTROM, Justice.

BKU Enterprises, Inc., appeals from a district court judgment affirming Job Service of North Dakota's decision that BKU's "independent dealers" were employees subject to job insurance taxes. We affirm.

BKU is a distributor of Kirby vacuum cleaners in the Fargo area. BKU enters into written contracts with "dealers," who sell the vacuums to customers through in-home demonstrations. The contract designates the dealer as an independent contractor. Dealers set their own schedules and need not regularly report work hours to BKU. Although BKU provides regularly scheduled training sessions for its dealers, attendance is not required. Dealers generally take vacuums from BKU on consignment. BKU provides a suggested retail price list, but dealers can sell the vacuums for more or less. When a sale is made, payment is given to BKU, which then pays the dealer a profit: the difference between the wholesale price and the price paid by the customer. If a customer pays by check, the check must be payable to BKU. The dealers do not have sales tax permits, and BKU remits the sales tax to the taxing authorities.

The dealers are not provided with cars, telephones, or office space. Most work out of their homes, with sales and demonstrations taking place in the customers' homes. The dealers have little or no investment in their business. BKU supplies financing forms, sales brochures, and business cards to the dealers, and also provides warranty service on vacuums sold by the dealers.

Under the written agreement, the dealer may only use the Kirby name and trademark "in the name of" BKU, and upon termination may not claim to be "affiliated with anyone who is authorized to sell or service Kirby Products." The dealer must perform services under the agreement personally, and must compile and forward customer records for warranty purposes. The dealer is also required to "comply with all directives . . . with regard to said warranty." Under the agreement, BKU may reject installment contract sales, and agrees to purchase trade-ins accepted by the dealers according to a written schedule. Although the agreement is for a one-year period, with automatic renewals, it permits either party to terminate the agreement without cause upon two-days' written notice.

In 1991, following a claim for unemployment benefits by a former "dealer," Job Service began investigating BKU's failure to pay job insurance taxes on its dealers. BKU requested a hearing, which was held on March 11, 1992. The Director of the Job Insurance Division issued a "Determination" concluding BKU's dealers were employees, not independent contractors. BKU appealed to Job Service, which affirmed the "Determination." BKU appealed to the district court, which affirmed the decision of Job Service. BKU appealed to this Court.

■ When an administrative agency decision is appealed from the district court, we review the decision of the agency, not the district court. *Midwest Property Recovery, Inc. v. Job Service*, 475 N.W.2d 918, 920 (N.D.1991). We limit our review to the record before the agency. *Midwest Property.*

■ This Court recently outlined the standard of review in administrative appeals:

"Ordinarily, a determination of an administrative agency is presumed to be correct. . . . Our review is governed by NDCC 28-32-19. Courts must affirm an administrative agency decision unless one of the six factors listed in NDCC 28-32-19 is present. . . . In reviewing an administrative order, 'there are three critical questions: (1) are the findings of fact supported by a preponderance of the evidence;

(2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law?' *Matter of Prettyman*, 410 N.W.2d 533, 536 (N.D.1987). Where the subject of an agency decision is a technical one, the expertise of the agency is entitled to respect. . . . We determine only whether the agency reasonably made its factual determinations from the greater weight of all the evidence in the entire record."

*Turnbow v. Job Service North Dakota*, 479 N.W.2d 827, 828 (N.D.1992) (citations and footnote omitted). The unemployment compensation law is remedial in nature and must be liberally construed in favor of the employee. *Turnbow* at 829; *Schaefer v. Job Service North Dakota*, 463 N.W.2d 665, 666 (N.D. 1990).

■ The sole issue presented upon appeal is whether BKU's dealers are employees or independent contractors. If they are employees, BKU must pay unemployment taxes for them.

The relevant statute is N.D.C.C. § 52-01-01(17)(e):

"Services performed by an individual for wages or under any contract of hire must be deemed to be employment subject to the North Dakota Unemployment Compensation Law unless it is shown that the individual is an independent contractor as determined by the 'common law' test."

Under the statute, Job Service bears the initial burden of showing the work is performed for wages or under a contract of hire; the employer, however, bears the burden of showing the worker is an independent contractor. *E.g., Turnbow* at 829; *Midwest Property Recovery* at 923. Applying the liberal interpretations of "wages" and "any contract of hire" under unemployment compensation law, BKU's dealers clearly performed services for wages or under a contract of hire. *See* N.D.C.C. § 52-01-01(31); *Turnbow* at 829; *Speedway, Inc. v. Job Service North Dakota*, 454 N.W.2d 526, 528-529 (N.D.1990). Accordingly, the question in this case is whether BKU carried its burden of proving its dealers are independent contractors under the common law test.

■ Under N.D.A.C. § 27–02–14–01(5)(a), the common law test focuses upon the employer's right to direct and control the means and manner of performing the work [1]:

"Generally, an employment relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what must be done but how it must be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if the employer has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. However, the right to terminate a contract before completion to prevent and minimize damages for a potential breach or actual breach of contract does not, by itself, suggest an employment relationship. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. The fact that the contract must be performed at a specific location, such as a building site, does not, by itself, constitute furnishing a place to work if the nature of the work to be done precludes a separate site or is the customary practice in the industry. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, the individual is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees."

Subsection (b) of N.D.A.C. § 27–02–14–01(5) lists twenty factors to be used as guidelines to determine if sufficient control is present to establish an employer-employee relationship.[2] BKU does not challenge the adminis-

---

1. This case involves services performed both before and after the common law test took effect on July 17, 1991. Job Service concluded BKU's dealers were employees under both the common law test and the earlier "ABC" test. Prior to July 17, 1991, N.D.C.C. § 52–01–01(17)(e) provided: "Services performed by an individual for wages or under any contract of hire must be deemed to be employment subject to the North Dakota Unemployment Compensation Law unless and until it is shown that: (1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; (2) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of the enterprise for which such service is performed; and (3) such individual is customarily engaged in an independently established trade, occupation, profession, or business."
This Court explained in *Midwest Property Recovery* at 923 (citation omitted):
"Under this provision, a person who meets all three of the subparts is deemed an independent contractor for job insurance taxation purposes. The burden is, however, on the employer to establish all three prongs of the test....

If any one of the three is missing or not established by the employer, the person in question cannot be deemed an independent contractor."
BKU has all but conceded its dealers are employees under the ABC test. In any event, our affirmance of Job Service's finding that BKU had the right to direct and control its dealers' work precludes BKU from establishing the first prong of the ABC test, and accordingly the dealers were not independent contractors for work performed before July 17, 1991.

2. N.D.A.C. § 27–02–14–01(5)(b) provides:
"As an aid to determining whether an individual is an employee under the common law rules, twenty factors or elements have been identified as indicating whether sufficient control is present to establish an employer-employee relationship. These twenty factors have been developed based on an examination of cases and rulings considering whether an individual is an employee. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. These twenty factors are designed only as guides for determining whether an individual is an employee; special scrutiny is required in applying these twenty factors to

assure that formalistic aspects of an arrangement designed to achieve a particular status do not obscure the substance of the arrangement; that is, whether the person or persons for whom the services are performed exercise sufficient control over the individual for the individual to be classified as an employee. These twenty factors are described below:

"(1) Instructions. A person who is required to comply with other persons' instructions about when, where, and how the person is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions.

"(2) Training. Training a person by requiring an experienced employee to work with the person, by corresponding with the person, by requiring the person to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

"(3) Integration. Integration of the person's services into the business operations generally shows that the person is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the persons who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

"(4) Services rendered personally. If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

"(5) Hiring, supervising, and paying assistants. If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the persons on the job. However, if one person hires, supervises, and pays the other assistants pursuant to a contract under which the person agrees to provide materials and labor and under which the person is responsible only for the attainment of a result, this factor indicates an independent contractor status.

"(6) Continuing relationship. A continuing relationship between the person and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

"(7) Set hours of work. The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

"(8) Full time required. If the person must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the person spends working and impliedly restrict the person from doing other gainful work. An independent contractor, on the other hand, is free to work when and for whom he or she chooses.

"(9) Doing work on the premises of the person or persons for whom the services are performed. If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the person, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the person is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

"(10) Order or sequence set. If a person must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the person is not free to follow the person's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so.

"(11) Oral or written reports. A requirement that the person submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control. By contract, however, parties can agree that services are to be performed by certain dates and the persons performing those services can be required to report as to the status of the services being performed so that the person for whom the services are being performed can coordinate other contracts that person may have which are required in the successful total completion of a particular project.

"(12) Payment by hour, week, month. Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

"(13) Payment of business or traveling expenses, or both. If the person or persons for whom the services are performed ordinarily pay the person's business or traveling expenses, or both, the person is ordinarily an employee. An employer, to be able to control expenses, gen-

trative rule, and relies on the twenty factors in arguing it has proven lack of control.[3]

 Whether a worker is an independent contractor or an employee is a mixed question of fact and law. *Turnbow* at 830; *Midwest Property Recovery* at 923. When reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law. *See Salter v. North Dakota Department of Transportation,* 505 N.W.2d 111, 112 (N.D.1993). Whether an employer has retained the right to direct and control the services performed by workers is a finding of fact. *Turnbow* at 831; *Midwest Property Recovery* at 924.

 BKU initially argues its contract with its independent dealers explicitly provides the dealers are independent contractors. The label used by the parties does not decide the issue; the important consideration is how the relationship between the parties actually operates. *Turnbow* at 830; *Midwest Property Recovery* at 923.

 BKU also argues a greater number of the twenty factors in N.D.A.C. § 27–02–14–01(5)(b) support a finding of independent contractor status, and therefore Job Service erred in finding the dealers were employees. Under the facts of this case, many of the twenty factors would support a finding of independent contractor status. Fact finding, however, is not the blind factoring of numerical quotients. Rather, fact finding is the *weighing* of evidence, which of necessity requires the fact finder to give greater importance to some factors than others. The administrative rule listing the twenty factors, which BKU concedes is controlling, specifi-

 erally retains the right to regulate and direct the person's business activities.

"(14) Furnishing of tools and materials. The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

"(15) Significant investment. If the person invests in facilities that are used by the person in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair value from an unrelated party), that factor tends to indicate that the person is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship.

"(16) Realization of profit or loss. A person who can realize a profit or suffer a loss as a result of the person's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the person who cannot is an employee. For example, if the person is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the person is an independent contractor. The risk that a person will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

"(17) Working for more than one firm at a time. If a person performs services under multiple contracts for unrelated persons or firms at the same time, that factor generally indicates that the person is an independent contractor. However, a person who performs services for more than one person may be an employee for each of the persons, especially where such persons are part of the same service arrangement.

"(18) Making service available to general public. The fact that a person makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

"(19) Right to discharge. The right to discharge a person is a factor indicating that the person is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the person to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

"(20) Right to terminate. If the person has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship. A contract can be terminated by the mutual agreement of the parties before its completion or by one of the parties to the contract before its completion to prevent a further breach of the contract or to minimize damages. This situation indicates an independent contractor relationship."

**3.** BKU emphasized the 1991 change in the law replacing the "ABC test" with the "Common Law test." However, BKU does not dispute that the administrative rule enumerating the twenty factors was properly adopted.

cally directs "[t]he degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed." N.D.A.C. § 27–02–14–01(5)(b).

■ We have reviewed Job Service's findings of fact in conjunction with the twenty factors in N.D.A.C. § 27–02–14–01(5)(b), and find sufficient support for the findings and conclusions. The relevant findings, as they correspond to those factors, include: BKU directed that vacuum cleaners were to be sold through in-home demonstrations (factor 1); the dealers' services were integrated into the business, as BKU's continued success was dependent upon the efforts of its sales force (factor 3); dealers were to perform services under the contract personally (factor 4); many dealers had long-term continuing relationships with BKU (factor 6); BKU furnished business cards and sales brochures to dealers (factor 14); dealers did not have a significant investment (factor 15); dealers did not in general have a significant risk of loss (factor 16); dealers generally did not work as salespeople for other firms at the same time (factor 17); dealers did not make their services available to the general public (factor 18); and, the contract between BKU and each of its dealers allowed either party to terminate it without liability (factors 19 and 20).

BKU's power to terminate the contracts with dealers without cause is an especially strong indication of employee status. See N.D.A.C. § 27–02–14–01(5)(a). The hallmark of an independent contractor relationship is the parties contract for a specific job to be done, or services to be performed for a specified period of time. When the contract gives the parties the right to terminate without cause, the relationship is more in the nature of employment at will. The power to terminate is highly suggestive of the power to control. As noted by another court holding that Kirby salespersons were employees:

"In this case Bevan had the right to terminate the services of his crew managers and salesmen at will. Having the power to discharge, he necessarily had the power to control practically all of the activities of those concerned. The fact that Bevan did not exercise the power makes no difference."

*Bevan v. California Employment Stabilization Commission,* 139 Cal.App.2d 668, 294 P.2d 524, 533–534 (1956).

Although not specifically listed in the twenty factors, the dealers lack of sales tax permits, and reliance on BKU to remit sales taxes to the appropriate authorities, also indicates employee status. If the dealers were running independent businesses, they would not rely on a third party for such an essential business function. The same is true of BKU's practice of requiring checks to be written to BKU, not the dealer.

We also note that the overwhelming majority of appellate courts addressing this issue have concluded Kirby's "independent dealers" are employees, not independent contractors, for purposes of unemployment compensation. *See Bevan; Sudduth v. California Employment Stabilization Commission,* 130 Cal.App.2d 304, 278 P.2d 946 (1955); *Weld County Kirby Co. v. Industrial Commission,* 676 P.2d 1253 (Colo.Ct.App.1983); *Murphy v. Daumit,* 387 Ill. 406, 56 N.E.2d 800 (1944); *Hart v. Johnson,* 68 Ill.App.3d 968, 25 Ill. Dec. 352, 386 N.E.2d 623 (1979); *Wallis v. Secretary of Kansas Department of Human Resources,* 236 Kan. 97, 689 P.2d 787 (1984); *Herron Enterprises, Inc. v. Labor and Industrial Relations Commission,* 765 S.W.2d 614 (Mo.Ct.App.1988); *Kirby Co. of Bozeman, Inc. v. Employment Security Division,* 189 Mont. 1, 614 P.2d 1040 (1980); *Kirkpatrick v. Peet,* 247 Or. 204, 428 P.2d 405 (1967). Only one court has concluded Kirby dealers are independent contractors for unemployment compensation purposes. *See Speaks, Inc. v. Jensen,* 309 Minn. 48, 243 N.W.2d 142 (1976).

Job Service found BKU retained the right to direct and control the services performed by the dealers. A reasoning mind reasonably could have found the greater weight of the evidence supported that finding. *See Midwest Property Recovery* at 924.

We conclude Job Service's findings are supported by a preponderance of the evidence, its legal conclusions are sustained by the findings of fact, and its decision is supported by the conclusions of law. The judgment is affirmed.[4]

VANDE WALLE, C.J., NEUMANN and MESCHKE, JJ., and BENNY A. GRAFF, District Judge, concur.

BENNY A. GRAFF, District Judge, sitting in place of LEVINE, J., disqualified.

---

4. The 1993 Legislature enacted N.D.C.C. §§ 34–05–01.4 and 52–04–17.1, which provide:

"*34–05–01.4. Independent contractors—Determination made by commissioner.* A person beginning work or working as an independent contractor may apply to the commissioner to receive verification of independent contractor status. The commissioner, upon receiving an application, shall review the circumstances for the applicant's job and other relevant information. When the information supports a finding under the 'common law' test that the applicant will be working or is working as an independent contractor, the commissioner shall issue a determination to verify the status of the applicant as an independent contractor and shall issue the independent contractor an identification number that will be invalid if the applicant's job changes. If the applicant's job changes, the applicant may reapply for a determination to verify independent contractor status."

"*52–04–17.1. Retroactive payment not required.* When the bureau reviews a potential employment relationship involving an independent contractor who has a valid identification number issued under section 34–05–01.4 and determines that the party described as an independent contractor is an employee for purposes of unemployment compensation, rather than an independent contractor, the bureau may not require the party determined to be the employer to pay contributions for that employee, or any interest, penalty, or delinquency fee with respect to those contributions, retroactive to the date the relationship with the employee began, unless, however, the bureau determines that the employer willfully and intentionally entered the relationship with the purpose of avoiding unemployment compensation benefits. The bureau may require the payment of contributions for that employee as of the date the order declaring an employment relationship becomes final."