2014 ND 81

STATE of North Dakota By and Through WORKFORCE SAFETY AND INSURANCE, Appellant

v.

LARRY'S ON SITE WELDING, Appellee

and

William Snook, Respondent.

No. 20130292.

Supreme Court of North Dakota.

April 29, 2014.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

Stephen D. Little, Bismarck, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Workforce Safety and Insurance appealed from a district court judgment affirming an administrative law judge's order finding William Snook and other similarly situated welders were independent contractors. We affirm the judgment, concluding the ALJ's findings of fact are supported by a preponderance of the evidence and the conclusions of law are supported by the facts.

I

[¶ 2] In October 2010, Snook was injured when he fell off a ladder while working on an oil rig platform. Snook submitted a claim for injury form to WSI. WSI conducted an investigation to determine Snook's employment status with Larry's On Site Welding ("Larry's"). Larry's did not have coverage with WSI. Snook reported to WSI that he worked for Larry's at the time of the injury. Larry Bumpous, the owner, claimed Snook was an independent contractor. WSI issued a notice of decision establishing employee status and

accepting claim and awarding benefits. Larry's submitted a request for reconsideration. WSI entered an order finding Snook was injured in the course of employment. The WSI order directed that Snook was to receive worker's compensation benefits, and that Larry's was required to establish an account with WSI and pay premiums for its employees.

[¶ 3] Larry's filed a demand for a formal hearing. Following a hearing, the ALJ reversed the WSI order and determined that Snook and other similarly situated welders were independent contractors and not employees. The ALJ also made over thirty fact findings. Among the findings, the ALJ found that Larry's provided on location welding services to oil rigs in North Dakota. Bumpous, the owner, provided the welding services himself and through other welders. There are no written contracts between Larry's and the welders that worked with Larry's. According to the ALJ, each welder's amount and type of work was directed by the oil rig foreman upon the welder's arrival at the respective rig site.

[¶ 4] The ALJ also found that, each time Larry's provided welding services to the oil rigs, he was required to enter into a Master Service Agreement. The Master Service Agreement was required whether Bumpous provided welding services himself or through others. According to the ALJ, "Larry's provides the umbrella insurance coverage required by the MSAs and is on the vendor's list for several drilling companies. Individuals seeking to work on the rigs must either be on the vendor's list or go through Larry's or other similarly situated businesses."

[¶ 5] Larry's paid the welders at an hourly rate. The ALJ found that the welder's time sheets showed their work with Larry's was sporadic. Workers were paid each week based on their hourly billings from the previous week. According to the ALJ, "Mr. Bumpus [sic] is able to do this because he uses a factoring company and absorbs the 1.5% cost of the money he receives. If the workers contracted directly with the rigs they might have to wait up to 120 days to be paid." Larry's generally received $95 per hour for services performed, and paid the welders $30 less per hour. The ALJ found it is more cost effective to have subcontractors than employees because of high turnover, and that welders "bounce around a lot from vendor to vendor and from state to state."

[¶ 6] The ALJ found that safety meetings were not conducted or required by Larry's, but were held by the "tool pusher or the company man and were held at the rigs." Welders working with Larry's paid for their own travel costs, lodging expenses and equipment. The ALJ found, "The workers provide their own supplies and they have their own equipment, tools and vehicles. Mr. Bumpus can discharge them at any time and they can quit at any time."

[¶ 7] Although Bumpous stated he did not train individuals, the ALJ found Bumpous did teach one individual how to weld and also provided advice to other welders. The ALJ found Bumpous did not direct workers how to do their jobs. According to the ALJ, the "tool pusher" at the rig directed the welders. "[Bumpous's] workers report after the rig pusher determines the job is completed and signs off on their work invoice. [The welders] turn in the signed invoices and tell [Bumpous] they are ready for another job."

[¶ 8] The ALJ found "Snook is a welder who worked for Larry's once on February 10, 2010, for 10.5 hours and once from October 26, 2010, through October 29, 2010, for a total of 20 hours." The ALJ found Snook's 2010 W–2 forms evidenced that he worked several other jobs and

earned much more money from those positions. Snook had his own welding truck, welder, acetylene torch, oxygen, acetylene, welding rods, and other miscellaneous tools required for welding. Snook paid for his own supplies, received no welding training from Bumpous, and was directed how "to perform the work by individuals at the rig and not by Mr. Bumpus." The ALJ found Snook fueled his vehicle and did not receive reimbursement for fuel.

[¶ 9] The first time Snook worked for Larry's in February 2010, Snook ceased working after the first day because his welding machine broke down. Bumpous did not provide Snook with a replacement welder to complete the work, and Snook did not return to the job site. The ALJ found the second time Snook worked for Larry's, in October 2010, Bumpous drove Snook out to the oil rig work site and instructed Bumpous "to put clips on the wing walls." Snook was not paid for the time spent driving to the rig, but was paid for his welding. Snook was brought on to weld the clips "because a welder who regularly worked under Larry's vendor's lists was hunting and was unavailable and Mr. Bumpus knew Mr. Snook needed work." The ALJ found that, on Snook's last day of work, "October 29, 2010—he was injured and unable to complete work that day. The greater weight of the evidence shows that Mr. Snook went and came when he chose to do so and that Mr. Snook and Larry's do not have an ongoing relationship."

[¶ 10] The ALJ noted, when Snook went to the doctor following his injury, the medical report stated that Snook told the doctor he could not have an MRI "due to uncertainty about ability to pay. He is not sure if this is going to be covered by Workforce Safety or the company he is working for since he is an independent contractor." The ALJ found "[t]he great-

er weight of the evidence shows that Mr. Snook did not perform his work on any location owned or controlled by Larry's." Finally, the ALJ noted, "Snook acknowledged he could decline work from Larry's. He understood that he could quit or be terminated at any time without penalty."

[¶ 11] Following these factual findings, the ALJ applied each factor of the common law employment test set out in N.D. Admin. Code § 92–01–02–49. The ALJ stated, "When considered in light of the 20 part common law test … the preponderance of the evidence shows that while Mr. Bumpus controls to whom he gives work and he can terminate his relationship with them at any time, he does not control how that work is performed." The district court affirmed the decision of the ALJ, finding that Snook was an independent contractor and not an employee of Larry's On Site Welding.

## II

[¶ 12] "Courts exercise limited appellate review of a final order by an administrative agency under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *Parsons v. Workforce Safety & Ins. Fund*, 2013 ND 235, ¶ 12, 841 N.W.2d 404. This Court reviews the decision of an administrative agency in the same manner as the district court, and must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. §§ 28–32–46 and 28–32–49.

[¶ 13] "When an independent ALJ issues final findings of fact, conclusions of law and order under N.D.C.C. § 65–02–22.1, courts apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions." *Bishop v. N.D. Workforce Safety & Ins.*, 2012 ND 217, ¶ 6, 823 N.W.2d 257. In deciding whether an ALJ's findings of fact are supported by a preponderance of evidence, this Court must not make independent findings or substitute its judgment for that of the ALJ. *See Bruder v. N.D. Workforce Safety & Ins. Fund*, 2009 ND 23, ¶ 7, 761 N.W.2d 588. In reviewing findings of fact, this Court determines only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proven by the weight of the evidence from the entire record. *Id.* Similar deference is not given to an ALJ's legal conclusions, however, and a court reviews an ALJ's legal conclusions in the same manner as legal conclusions generally. *Mickelson v. N.D. Workforce Safety & Ins.*, 2012 ND 164, ¶ 8, 820 N.W.2d 333. Questions of law are fully reviewable on appeal. *Id.*

[¶ 14] "Whether a worker is an independent contractor or an employee is a mixed question of fact and law." *Matter of BKU Enterprises, Inc.*, 513 N.W.2d 382, 387 (N.D.1994). In reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law. *Id.* "Whether an employer has retained the right to direct and control the services performed by workers is a finding of fact." *Id.*

## III

[¶ 15] WSI argues the ALJ erred in concluding Snook and similarly situated welders met the legal standard of an independent contractor. WSI contends the ALJ erred in applying the factors of the common law test set out in N.D. Admin. Code § 92–01–02–49.

[¶ 16] Section 65–01–03(1), N.D.C.C., states, "Each individual who performs services for another for remuneration is presumed to be an employee of the person for which the services are performed, unless it is proven that the individual is an independent contractor under the common-law test." The party that asserts an individual is an independent contractor has the burden of proving that fact. *Id.*

[¶ 17] "[T]he label the parties place on the relationship is not determinative. It is how the relationship between the parties actually operates which is important." *Midwest Prop. Recovery, Inc. v. Job Serv. of N.D.*, 475 N.W.2d 918, 923 (N.D.1991). "The central question in determining whether an individual is an employee or independent contractor is: Who is in control?" *Myers–Weigel Funeral Home v. Job Ins. Div. of Job Serv. N.D.*, 1998 ND 87, ¶ 9, 578 N.W.2d 125; *see also Matter of BKU Enterprises, Inc.*, 513 N.W.2d 382, 385 (N.D.1994) (stating, "the

common law test focuses upon the employer's right to direct and control the means and manner of performing the work").

[¶ 18]   The common law test states:

An employment relationship exists when the person for whom services are performed has the right to control and direct the individual person who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished.  It is not necessary that the employer actually direct or control the manner in which the services are performed;  it is sufficient if the employer has the right to do so.  The right to discharge is a significant factor indicating that the person possessing that right is an employer.  The right to terminate a contract before completion to prevent and minimize damages for a potential breach or actual breach of contract does not, by itself, establish an employment relationship.  Other factors indicating an employer-employee relationship, although not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the person who performs the services.  The fact that the contract must be performed at a specific location such as building site, does not, by itself, constitute furnishing a place to work if the nature of the work to be done precludes a separate site or is the customary practice in the industry.  If a person is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, the person will likely be an independent contractor.

N.D. Admin. Code § 92–01–02–49(1)(a). Section 92–01–02–49(1)(b), N.D. Admin. Code, provides a list of twenty factors that are used to determine whether a person is an independent contractor or an employee. "The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed."  N.D. Admin. Code § 27–02–14–01(5)(b).  Among the twenty factors, several "must be given more weight in determining whether an employer-employee relationship exists."  N.D. Admin. Code § 92–01–02–49(2).  Those factors are:  integration;  continuing relationship;  significant investment;  realization of profit or loss;  working for more than one firm at a time;  making services available to the general public;  right to dismissal;  and the right to termination.

[¶ 19]   WSI argues the ALJ erred in her application of the weighted and non-weighted factors of the common law test. WSI contends the ALJ failed to adequately address undisputed facts pertinent to the application of those factors, and as a result, erred as a matter of law in determining Snook and similarly situated workers were independent contractors.  WSI contests the factors the ALJ concluded were neutral or favored Snook's status as an independent contractor.

[¶ 20]   This Court has instructed, "Fact finding ... is not the blind factoring of numerical quotients.  Rather, fact finding is the *weighing* of evidence, which of necessity requires the fact finder to give greater importance to some factors than others."  *Matter of BKU Enterprises, Inc.,* 513 N.W.2d 382, 387 (N.D.1994) (emphasis in original).  Here, there are certain facts that go toward a finding of independent contractor status as well as facts that support a finding of employee status.  However, fact findings are within the province of the ALJ who hears the witnesses, sees their demeanor, evaluates their credibility, and is in a better position to ascertain the facts than an appellate court relying on a cold record.  *Muldoon v. N.D. Workforce*

*Safety & Ins. Fund,* 2012 ND 244, ¶ 8, 823 N.W.2d 761.

[¶ 21] Upon review of the ALJ's findings of fact, we conclude a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record. Here, the preponderance of the evidence shows that Snook briefly worked with Larry's on two separate occasions, with many months in between each stint. The record also shows that Snook and the other similarly situated welders used their own welding equipment, tools, trucks, and paid for their own expenses to reach the respective work sites. Additionally, welders were only paid for time spent welding. When Snook's equipment malfunctioned, he did not complete the job and was not provided substitute equipment. The preponderance of the evidence also reflects the welders were instructed by an oil rig "tool pusher" or company man as opposed to being instructed by Bumpous. Given our deference to the ALJ's factual findings, we conclude the factual findings were supported by a preponderance of the evidence.

[¶ 22] We also conclude the ALJ's legal determination that Snook and the similarly situated welders were independent contractors is supported by the findings of fact. With respect to the contested factors contained in N.D. Admin. Code § 92–01–02–49(1)(b)(1)–(20), the ALJ made the following findings: (factor 1) the rig foreman, as opposed to Bumpous, instructed the welders what work needed to be done at each specific oil rig; (factor 2) Snook was an established welder who required no training from Larry's; (factor 6) a continuing relationship did not exist between Snook and Larry's (although the court did find this factor favored employee status with regard to the other welders); (factor 7) there was not a set work schedule as the work was performed when the drilling rigs needed it completed and was not set or established by Larry's; (factor 8) Snook was not a full time employee as his work was sporadic and reflected the nature of the work in the oil field; (factor 9) the welders did not work on set premises but instead worked from their own trucks; (factor 10) the drilling rig foreman determined the work that needed to be done; (factor 11) Snook and the other welders provided written reports primarily for pay purposes; (factor 14) the welders furnished their own welding tools and supplies; (factor 17) Snook worked for various other companies and came and went as he pleased; and (factor 18) Snook and the other welders made their services available for hire and tried to find additional work when they were not working with Larry's. Having reviewed each of the contested common law factors, both weighted and non-weighted, we conclude the factual evidence supports a finding that Bumpous did not direct or control the means and manner of performing the work. The legal conclusion that Snook and the other similarly situated welders were independent contractors is supported by the findings of fact.

IV

[¶ 23] We affirm the judgment, concluding the ALJ's findings of fact are sustained by a preponderance of the evidence, and the conclusions of law are supported by the findings of fact.

[¶ 24] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.