2016 ND 154

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Curtis Vernon FRANCIS, Defendant and Appellant.**

No. 20150280.

Supreme Court of North Dakota.

July 20, 2016.

Katherine M. Naumann (argued), Assistant State's Attorney, Jamestown, ND, for plaintiff and appellee.

Ariston E. Johnson (argued), Watford City, ND and Thomas A. Dickson (on brief), Bismarck, ND, for defendant and appellant.

Lori S. Mickelson, Office of the Attorney General, Bismarck, ND, for amicus curiae North Dakota Attorney General.

KAPSNER, Justice.

[¶ 1] Curtis Francis appeals from a criminal judgment after conditionally pleading guilty to gathering signatures within 100 feet of a polling place. We conclude the electioneering law he was charged under does not violate the First Amendment to the United States Constitution, and it is a reasonable restriction on the North Dakota Constitution's initiated ballot measure provision. We also conclude Francis has failed to show he was selectively prosecuted. We affirm the judgment.

I

[¶ 2] Francis and another man, Michael Dax, were collecting signatures near the Jamestown Civic Center, a designated polling place, on voting day. They were doing so in an effort to get an initiated measure regarding environmental concerns placed on the next ballot. While they were collecting signatures, it began to rain. They moved under a canopy covering an entrance to the polling place. They continued collecting signatures as individuals walked past them to vote.

[¶ 3] One voter told an election clerk about Francis and Dax's activities. The clerk informed the county auditor. The auditor, along with a plain-clothed security officer, went to speak with Francis and Dax. They informed the two it was illegal to collect signatures within 100 feet of a polling place. Dax began arguing with the auditor; Francis continued collecting signatures. A police officer was dispatched. The officer confiscated the signatures, but did not arrest Francis or Dax. After the incident, the officer forwarded a report to the county prosecutor.

[¶ 4] The prosecutor filed charges against Francis for collecting signatures within 100 feet of an open polling place in violation of N.D.C.C. § 16.1–10–06.2. Francis filed a motion to dismiss the charges. He argued the law infringes upon his right to free speech and violates the North Dakota Constitution's ballot initiative provision. He also argued he was selectively prosecuted because of his support for the environmental initiative in a county where the measure was unpopular. He asserted others, both supporting and opposing the same initiated measure, broke the same election law but were not prosecuted in other counties based on the popularity of the initiated measure in that county. The district court denied Francis's motion. Francis conditionally pled guilty and appealed.

II

[¶ 5] On appeal, Francis argues N.D.C.C. § 16.1–10–06.2 is an unconstitutional violation of the First Amendment both on its face and as applied to him.

[¶ 6] We review constitutional challenges to a statute de novo. *Teigen v. State*, 2008 ND 88, ¶ 7, 749 N.W.2d 505. "All regularly enacted statutes carry a strong presumption of constitutionality.... The presumption of constitutionality is so strong that a statute will not be declared unconstitutional unless its invalidity is, in the court's judgment, beyond a reasonable doubt." *State v. Baxter*, 2015 ND 107, ¶ 5, 863 N.W.2d 208 (quoting *Beylund v. Levi*, 2015 ND 18, ¶ 17, 859 N.W.2d 403).

[¶ 7] Section 16.1–10–06.2, N.D.C.C., provides:

A person may not approach a person attempting to enter a polling place, or who is in a polling place, for the purpose of selling, soliciting for sale, advertising

for sale, or distributing any merchandise, product, literature, or service. A person may not approach a person attempting to enter a polling place, who is in a polling place, or who is leaving a polling place for the purpose of gathering signatures for any reason. These prohibitions apply in any polling place or within one hundred feet [30.48 meters] from any entrance leading into a polling place while it is open for voting.

### A

 [¶ 8] Francis argues N.D.C.C. § 16.1–10–06.2 is unconstitutional because it violates his right to free speech under the First Amendment to the United States Constitution. The State asserts it is a constitutional time, place, and manner restriction on speech.

[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.

*McCullen v. Coakley*, — U.S. —, 134 S.Ct. 2518, 2529, 189 L.Ed.2d 502 (2014) (alteration in original). We first examine whether the statute is content neutral.

The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech.

*Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (emphasis in original) (citations omitted).

[¶ 9] We determine N.D.C.C. § 16.1–10–06.2 is content neutral. The statute's purpose is to facilitate citizens' right to vote. Its enforcement does not depend on a particular message or viewpoint; enforcement depends on whether an individual collects a signature at the prohibited time within the prohibited area, regardless of the purpose for collecting the signature. *See, e.g., McCullen*, 134 S.Ct. at 2531 ("The Act would be content based if it required enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred. But it does not. Whether petitioners violate the Act depends not on what they say, but simply on where they say it.") (citations omitted). In *Bolinske v. North Dakota State Fair Ass'n*, 522 N.W.2d 426 (N.D.1994), we upheld a statute that prohibited individuals from gathering signatures for petitions at the state fair unless they did so from a rented booth. *Id.* at 429. We held the statute was content neutral because "[i]t applies to all persons and organizations desiring to ... gather signatures for any petitions at the state fair." *Id.* at 433. In the present case, the statute is even less specific. It prohibits "gathering signatures for any reason." N.D.C.C. § 16.1–10–06.2.

 [¶ 10] Having determined N.D.C.C. § 16.1–10–06.2 is content neutral, we must decide whether it is narrowly tailored to serve a significant government interest.

For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests. Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests. But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.

*McCullen,* 134 S.Ct. at 2535 (citations omitted).

[¶ 11] We conclude the government's interest in facilitating citizens' right to vote is more than significant; it is compelling. In *Burson v. Freeman,* the United States Supreme Court was presented with "a particularly difficult reconciliation: the accommodation of the right to engage in political discourse with the right to vote—a right at the heart of our democracy." 504 U.S. 191, 198, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). The Court determined states have a compelling interest in preventing voter intimidation and election fraud. *Id.* at 199–200, 112 S.Ct. 1846.

[¶ 12] The more difficult question is whether the statute is "narrowly tailored." In *Emineth v. Jaeger,* 901 F.Supp.2d 1138, 1146 (D.N.D.2012), a North Dakota statute prohibiting all electioneering speech on election day, besides permanent advertisements and bumper stickers, was held unconstitutional by a federal district court. After that case, the Legislature amended N.D.C.C. § 16.1–10–06.2 to apply only at times when a polling place is open, rather than "on election day" generally. *See* 2013 N.D. Sess. Laws ch. 173, § 3. Francis cites to a more recent federal case, *McCullen,* 134 S.Ct. 2518, and argues the law, despite the amendment, still is not narrowly tailored. In that case, the United States Supreme Court ruled on the constitutionality of a statute prohibiting persons from being within thirty-five feet of a reproductive healthcare facility during business hours unless they are employees, emergency personnel, or are coming or going from the facility. *Id.* at 2526. The Court determined the statute "burden[ed] substantially more speech than necessary." *Id.* at 2537.

[¶ 13] The State, on the other hand, asserts the statute here is comparable to the one upheld in *Burson.* In that case, a statute created a 100–foot buffer zone around polling places. The buffer zone specifically prohibited electioneering speech. 504 U.S. at 193–94, 112 S.Ct. 1846. The Court, applying strict scrutiny because the statute at issue applied only to political speech, upheld the restriction:

A long history, a substantial consensus, and simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right. Given the conflict between these two rights, we hold that requiring solicitors to stand 100 feet from the entrances to polling places does not constitute an unconstitutional compromise.

*Id.* at 211, 112 S.Ct. 1846. Section 16.1–10–06.2, N.D.C.C., limits the act of collecting signatures, is curtailed by a 100–foot boundary, and is only applicable while polling places are open. The statute in *McCullen,* despite its shorter distance, was more inclusive. It created a permanent prohibition on people being present within an area. We believe N.D.C.C. § 16.1–10–06.2 is more akin to the statute upheld in *Burson.*

[¶ 14] We must determine whether N.D.C.C. § 16.1–10–06.2 leaves open ample alternatives for communication. "A regulation restricting protected expression

must also leave open ample alternative channels for communication." *Bolinske,* 522 N.W.2d at 434. The statute restricts the gathering of signatures within 100 feet of a polling place on election day while voting is occurring. Under this law, individuals may gather signatures outside of the 100–foot zone or do so within the zone during times when polling is not open. Thus, ample alternatives for the gathering of signatures are available.

▬ [¶ 15] In time, place, and manner restriction cases, "[t]o meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen,* 134 S.Ct. at 2540. However, the United States Supreme Court has drawn a distinction between general time, place, and manner restrictions and those that are meant to protect the sanctity of the voting process and curb election fraud:

> [T]his Court never has held a State to the burden of demonstrating empirically the objective effects on political stability that are produced by the voting regulation in question [in *Burson*]. Elections vary from year to year, and place to place. It is therefore difficult to make specific findings about the effects of a voting regulation. Moreover, the remedy for a tainted election is an imperfect one. Rerunning an election would have a negative impact on voter turnout. Thus, requiring proof that a 100–foot boundary is perfectly tailored to deal with voter intimidation and election fraud would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action. Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral

process with foresight rather than reactively, provided that the response is reasonable and does not *significantly impinge* on constitutionally protected rights.

*Burson,* 504 U.S. at 208–09, 112 S.Ct. 1846 (emphasis in original) (citations omitted). *See also McCullen,* at 2540 ("We approved the [*Burson*] buffer zones as a valid prophylactic measure...."). We conclude N.D.C.C. § 16.1–10–06.2 is a constitutional time, place, and manner restriction. It is narrowly tailored to serve the government's compelling interest in protecting the sanctity of the voting process and curbing election fraud, it does not significantly impinge on constitutionally protected rights, and it leaves open ample alternatives for communication. We hold its prohibition on the collection of signatures within 100 feet of an open polling place is a constitutional limit on speech.

B

▬ [¶ 16] Francis also argues the statute is unconstitutional, as applied to his case, because it is overly broad. "The doctrine of overbreadth prohibits the law from criminalizing constitutionally protected activity. A governmental purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarily broad and thereby invade the area of protected freedoms." *City of Fargo v. Salsman,* 2009 ND 15, ¶ 25, 760 N.W.2d 123 (citations omitted). "The overbreadth doctrine permits an individual whose own speech or conduct may be prohibited ... to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so." *McCrothers Corp. v. City of Mandan,* 2007 ND 28, ¶ 27, 728 N.W.2d 124 (alteration in original) (quoting *SOB, Inc. v. Cnty. of Benton,* 317 F.3d 856,

864 (8th Cir.2003)). In other words, "State action can be challenged on overbreadth grounds for its potential to chill or infringe free speech even though the challenger's rights may not have been violated under the circumstances." *Bolinske*, 522 N.W.2d at 429–30.

[¶ 17] Francis argues: "Even if the electioneering statute were constitutional on its face, it is not when applied in this case. Prosecuting Francis under the statute is an unconstitutional, overly broad application." Francis's argument misinterprets the doctrine of overbreadth. The doctrine allows individuals to challenge a law on its face, regardless of the law's applicability to their case, because the law infringes on a substantial amount of constitutionally protected conduct. For example, Francis might have challenged N.D.C.C. § 16.1–10–06.2 on overbreadth grounds based on the statute's application to other activities even though he was convicted for collecting signatures. "This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

[¶ 18] Here, Francis has not explained how N.D.C.C. § 16.1–10–06.2 may chill other constitutionally permissible speech. Nor has he met his burden of showing the statute infringes upon a substantial amount of constitutionally protected conduct. *See State v. Brown*, 2009 ND 150, ¶ 30, 771 N.W.2d 267 ("Brown has the burden to demonstrate that the Ordinance infringes upon a substantial amount of constitutionally protected conduct."). Rather, Francis attempts to use the overbreadth doctrine to argue his conduct, collecting signatures near an open polling place, is

constitutionally protected. We have already addressed this argument and held the N.D.C.C. § 16.1–10–06.2 prohibition of collecting signatures within 100 feet of an open polling place is a constitutional time, place, and manner restriction. *See* ¶¶ 8–15. Because Francis has not shown how N.D.C.C. § 16.1–10–06.2 is overly broad or explained what constitutionally protected speech its sweep infringes upon, we conclude his argument is without merit.

### III

[¶ 19] Francis argues the electioneering statute violates Article III, Section 1 of the North Dakota Constitution, which provides:

> While the legislative power of this state shall be vested in a legislative assembly consisting of a senate and a house of representatives, the people reserve the power to propose and enact laws by the initiative, including the call for a constitutional convention; to approve or reject legislative Acts, or parts thereof, by the referendum; to propose and adopt constitutional amendments by the initiative; and to recall certain elected officials. This article is self-executing and all of its provisions are mandatory. *Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers.*

(Emphasis added). "However, the power of the people to refer and initiate laws is not absolute; it is subject to reasonable regulation through laws meant to facilitate those powers." *Bolinske*, 522 N.W.2d at 437.

[¶ 20] In *Bolinske*, we interpreted a statute that limited the area where signatures for petitions could be collected at the state fair; individuals were prohibited from collecting signatures unless they did so from a rented booth. 522 N.W.2d at 429. Bolinske argued this regulation was

a violation of N.D. Const. art. III, § 1 because it hampered the ballot initiative process. We held the statute did not violate the Constitution's initiated measure provision because it "structures and accommodates the petition circulation process. . . ." *Id.* at 437.

> [W]e refuse Bolinske's invitation to interpret Article III, Section 1, of the North Dakota Constitution, as prohibiting any regulation of the initiative process on public property. To do so would place that activity on a higher plane than all other forms of constitutionally protected expression. The plain language of Article III, Section 1, does not mandate that result.

*Id.* Applying similar reasoning in *Husebye v. Jaeger,* we struck down a statute that limited the time individuals could collect signatures for initiated measures because the statute did not facilitate the initiated measure process in any way: "A statute which shortens the constitutionally required period for submitting petitions . . . without a countervailing enhancement for the referral process, cannot possibly be construed to 'facilitate and safeguard' the referral power." 534 N.W.2d 811, 816 (N.D.1995).

[¶ 21] The State argues, and the district court found, the law in this case provides a "countervailing enhancement" because it facilitates the right to vote: "[i]f voters are denied access to the polling place, the value of placing a measure on the ballot by initiative or referral is diminished." Thus, the State contends the electioneering law facilitates, rather than restricts, the initiated measure process.

[¶ 22] Section 16.1–10–06.2, N.D.C.C., does not provide a specific "countervailing enhancement" to the initiative process. Any enhancement it may provide is, at best, indirect by facilitating voting generally. We are therefore forced to balance the two conflicting constitutional rights at odds in this case: the right to initiate ballot measures and the right to vote. The right to vote is fundamental. *Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The United States Supreme Court has held that when two fundamental constitutional rights are at issue, a state may impose a limited restricted zone around the voting area to protect the state's compelling interest in preserving the integrity of the voting process:

> Here, the State, as recognized administrator of elections, has asserted that the exercise of free speech rights conflicts with another fundamental right, the right to cast a ballot in an election free from the taint of intimidation and fraud. A long history, a substantial consensus, and simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right. Given the conflict between these two rights, we hold that requiring solicitors to stand 100 feet from the entrances to polling places does not constitute an unconstitutional compromise.

*Burson,* 504 U.S. at 211, 112 S.Ct. 1846. We conclude the N.D.C.C. § 16.1–10–06.2 restriction on collecting signatures near open polling places is a reasonable restriction on the ballot initiative process. We caution, however, that the N.D. Const. art. III, § 1 mandate stands: "Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair [the ballot initiative process]."

## IV

[¶ 23] Francis argues he was selectively prosecuted while others who violated election laws were not. Francis points to two instances—one in Grand Forks County and one in Burleigh County—where similar alleged violations were not prosecuted. Francis claims he was charged because his political stance was disfavored in Stutsman County.

[¶ 24] Francis's selective prosecution claim raises issues of both fact and law. "In reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law." *Workforce Safety & Ins. v. Larry's On Site Welding*, 2014 ND 81, ¶ 14, 845 N.W.2d 310. "Under this standard, we review the questions of law subject to the de novo standard of review [and the] findings of fact subject to the clearly erroneous standard of review." *State v. Arot*, 2013 ND 182, ¶ 7, 838 N.W.2d 409 (alteration in original).

[¶ 25] Prosecutors have broad discretion to enforce statutory violations. *State v. Bear*, 2015 ND 36, ¶ 11, 859 N.W.2d 595. However, the Equal Protection Clause forbids the enforcement of laws based on improper motives such as race, religion, or other arbitrary classification. *United States v. Armstrong*, 517 U.S. 456, 464–65, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id.* at 465, 116 S.Ct. 1480.

To support a defense of selective prosecution a defendant must establish that other individuals similarly situated have not generally been prosecuted and that the State's selection of him for prosecution is invidious or in bad faith; that is,

based upon constitutionally impermissible considerations such as wealth. *State v. Mathisen*, 356 N.W.2d 129, 133 (N.D.1984).

[¶ 26] To support his assertion, Francis points to alleged violations in other counties that were not prosecuted. The State counters by arguing there were no violations that went unprosecuted in Stutsman County, and Francis was prosecuted simply because there was probable cause he broke the law. The trial court found the evidence of selective prosecution proffered by Francis "does not meet the heavy burden of proof necessary to demonstrate a constitutionally impermissible enforcement of a statute." After reviewing the record, we conclude it is void of any evidence indicating the Stutsman County prosecutor was biased against Francis, chose to prosecute him because of his political stance, or refrained from prosecuting someone else because of a different political stance. Francis has failed to meet his burden.

## V

[¶ 27] We affirm the criminal judgment.

[¶ 28] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.