2017 ND 241

STATE of North Dakota, BY AND THROUGH WORKFORCE SAFETY AND INSURANCE, Appellant

v.

QUESTAR ENERGY SERVICES, INC., Appellee

No. 20170059

Supreme Court of North Dakota.

Filed 10/17/2017

**758**

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

Sarah A. Herman (argued) and Claire L. Smith (on brief), Fargo, ND, for appellee.

Jensen, Justice.

[¶ 1] North Dakota Workforce Safety and Insurance ("WSI"), appealed from the judgment affirming a decision of an Administrative Law Judge ("ALJ") that had reversed WSI's administrative reclassification of Questar Energy Services, Inc.'s ("Questar") employees. We affirm.

I

[¶ 2] In July 2012, Questar applied for and received insurance coverage from WSI. Following an audit in 2014, WSI determined Questar's employees had been improperly classified and reclassified Questar's employees. The classification of employees directly impacts the insurance rate used to calculate Questar's premiums for the insurance received from WSI.

[¶ 3] WSI issued a Notice of Decision to inform Questar of the audit results and the reclassification of Questar's employees. Questar filed with WSI a request for reconsideration of WSI's decision to reclassify Questar's employees. WSI issued an administrative order confirming its Notice of Decision and Questar responded by requesting a rehearing. The request for a rehearing triggered the administrative hearing process and the assignment of an ALJ.

[¶ 4] Following an administrative hearing, the ALJ issued Findings of Fact, Conclusions of Law, and Final Order reversing WSI's administrative order. The ALJ applied a preponderance of the evidence standard for the review of WSI's employee classification determination. Applying that standard, the ALJ concluded the evidence provided during the hearing did not support WSI's reclassification but did support Questar's requested classification. WSI appealed the ALJ's decision to the district court, which concluded the ALJ applied the correct standard of review, properly excluded changes to the Rate Classification Manual made after WSI's determination, and properly determined Questar's requested classification was supported by a preponderance of the evidence.

II

[¶ 5] WSI appeals the judgment entered following the district court's review of the ALJ's determination. WSI contends the ALJ applied the wrong standard of review, improperly excluded from evidence the changes to the Rate Classification Manual, and erred in determining classification of Questar's employees was not supported by the record.

[¶ 6] Appellate review of a final order of an administrative agency is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. Pursuant to the di-

rectives contained in N.D.C.C. §§ 28–32–46 and 28–32–49, the district court and this Court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 7] This Court recently summarized appellate review of and the deference given to an ALJ's factual findings and legal conclusions as follows:

In reviewing an ALJ's factual findings, a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. [*Workforce Safety &Ins. v.*] *Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). When reviewing an appeal from a final order by an independent ALJ, similar deference is given to the ALJ's factual findings because the ALJ has the opportunity to observe and assess witnesses' credibility and resolve conflicts in the evidence. *Auck*, at ¶ 9. Similar deference is not given to an independent ALJ's legal conclusions, and a court reviews the independent ALJ's legal conclusions in the same manner as legal conclusions generally. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal. *Id.*

*Indus. Contractors, Inc. v. Taylor*, 2017 ND 183, ¶ 8, 899 N.W.2d 680.

[¶ 8] The ALJ's legal conclusion regarding the appropriate standard of review for reviewing WSI's classification of Questar's employees is a question of law which may be fully reviewed on appeal. The ALJ applied a preponderance of the evidence standard of review, concluding that classification of employees by WSI is a question of fact. WSI contends that classification of employees is a question of law, and the ALJ's review should have been limited to consideration of whether or not WSI's conclusion of law (the classification of employees) was supported by WSI's findings of fact. We hold that WSI's determination regarding the classification of employees is a mixed question of law and fact.

[¶ 9] Classification of employees by WSI is analogous to the determination of whether or not a worker is an independent contractor or an employee. We have previously recognized determination of whether a worker is an employee or an independent contractor is a mixed question of law and fact, stating the following:

"Whether a worker is an independent contractor or an employee is a mixed

question of fact and law." *Matter of BKU Enterprises, Inc.,* 513 N.W.2d 382, 387 (N.D. 1994). In reviewing a mixed question of fact and law, the underlying predicate facts are treated as findings of fact, and the conclusion whether those facts meet the legal standard is a question of law. *Id.*

*Workforce Safety & Ins. v. Larry's On Site Welding,* 2014 ND 81, ¶ 14, 845 N.W.2d 310. In this case, our review of the classification of the employees is therefore divided into two tasks: determination of whether the underlying predicate facts are supported by a preponderance of the evidence and determination of whether those findings support the classification.

### III

[¶ 10] Our review of the ALJ's findings of fact is limited to consideration of whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Workforce Safety & Ins. v. Auck,* 2010 ND 126, ¶ 9, 785 N.W.2d 186; *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D. 1979). Deference must be given to the independent ALJ's factual findings because the ALJ has the opportunity to observe and assess witnesses' credibility and resolve conflicts in the evidence. *Auck,* at ¶ 9. A review of the record supports a determination that a reasoning mind reasonably could have determined the underlying factual findings were proven by the weight of the evidence as provided by the ALJ.

[¶ 11] Although the ALJ's factual findings were appropriate, the determination of which Rate Classification Code is supported by those factual findings is a conclusion of law which must also be reviewed. Deference is not given to an independent ALJ's legal conclusions, and this Court reviews the independent ALJ's legal conclusions in the same manner as legal conclusions generally. *Auck,* 2010 ND 126, ¶ 9, 785 N.W.2d 186. "Questions of law, including the interpretation of a statute, are fully reviewable on appeal." *Id.*

[¶ 12] In reviewing the conclusions of law, we are first required to determine which version of the Rate Classification Code applies. In November 2014, WSI provided Questar notice of its intent to conduct an audit of Questar for the period of July 1, 2013 through June 30, 2014. WSI's initial decision was issued and provided to Questar in February 2015. In July 2015, WSI modified the Rate Classification Manual to change the definition of Rate Classification Code 6208—Oil and Gas Instrument Logging, the code WSI determined to be appropriate when it reclassified Questar's employees. WSI argues the ALJ should have considered the 2015 modifications as a clarification of the 2013 and 2014 codes.

[¶ 13] Prior to the modification of the Rate Classification Manual, the definition of Code 6208 read as follows in 2013:

> On-site oil consulting, analyzing and wireless testing services from trailers or mobile units located at well sites, but not at the well-drilling area. Does not include extraction of samples at or on derrick.
>
> Specialty trade contractors offering services that include the detection and analysis of oil and gas by conducting oil or gas flow tests such as, but not limited to, hole pressure tests, well temperature tests, well depth tests, and volume tests.
>
> Wireline service contractors who maintain records and take measurements.
>
> Mud instrument loggers—analyze core samples to identify strata and determine nature of earth formations penetrated.

Following the July 2015 modifications, Code 6208 provided:

On-site oil consulting, safety consulting, analyzing and wireless testing services within from trailers or mobile units located at well sites, but not at the well-drilling area. Does not include extraction of samples at or on derrick.

Specialty trade contractors offering services that include the detection and analysis of oil and gas by conducting oil or gas flow tests such as, but not limited to, hole pressure tests, well temperature tests, well depth tests, and volume tests. Employees operate within from trailers or mobile units located at well sites, but not the well-drilling area.

Wireline service contractors who maintain records and take measurements. Employees operate within from trailers or mobile units located at well sites, but not the well-drilling area.

Mud instrument loggers—analyze core samples to identify strata and determine nature of earth formations penetrated. Employees operate within from trailers or mobile units located at well sites, but not the well-drilling area. Does not include extraction of samples at or on derrick.

WSI added the underlined language and removed the language struck through in July 2015.

[¶ 14] WSI contends the 2015 modifications were only clarifications of the classifications and did not modify the meaning of Code 6208. We agree with the ALJ's conclusion that the language added in July 2015 to Code 6208 was a modification of the classification and not merely an interpretation as suggested by WSI. Because it was a modification of the definition, application of the July 2015 modification to the audit period would be inappropriate.

[¶ 15] WSI asserts that the employees fall within Code 1320[A]. Questar asserts the employees fall within Code 6208. For the time period at issue, Code 1320—Oil or Gas Operations read as follows:

Completed oil or gas well operations— the activities and methods necessary to prepare a well for the production of oil and gas, including well testing flow-back operations.

Contract pumping and related duties. Employees attend producing wells and/ or, supervision of any number of wells ensuring steady production. [A]

Geophysical exploration—seismic method. Seismic detection of the mechanical properties of the earth. [B]

Core and prospective drilling. Includes "hole plugging" after the seismic crew has completed drilling operations. [C]

No construction, development, or major repair by workover rigs.

Maintenance and repairs by specialty trade contractors rated separately.

[¶ 16] The ALJ's factual findings support a conclusion of law that the appropriate rate classification is Code 6208. At the administrative hearing, the ALJ heard testimony about the job duties of Questar's employees. A Questar employee testified that employees provide oil and natural gas sampling and analysis service, which is primarily completed in pickup trucks. Additionally, a Questar employee testified employees are only on the well site after drilling is completed, and he believed Code 6208 was the proper classification. A WSI employee also testified that Questar's employees completed job duties outside the pickup trucks, which he believed fell within the scope of Code 1320.

[¶ 17] Based on the evidence, the ALJ found the overwhelming amount of work performed by the employees involved "on-site oil consulting, analyzing and wireless testing services from trailers or mobile units located at well sites" as reflected in Code 6208. None of the work was per-

formed at the "well-drilling area" because by the time the Questar employees arrived at the well site, the drilling was completed, the derrick had been removed, and it was no longer a well-drilling area. The ALJ found the employee tasks were not "activities and methods necessary to prepare a well for the production of oil and gas, including well testing flow-back operations" as reflected in Code 1320. The ALJ determined the appropriate classification for Questar employees was Code 6208.

## IV

[¶ 18] The ALJ's underlying factual conclusions are supported by a preponderance of the evidence. The ALJ's legal conclusion that Questar's employees fall within classification Code 6208 is supported by the ALJ's factual findings. We affirm.

[¶ 19] Jon J. Jensen

Jerod E. Tufte

Daniel J. Crothers

I concur in the result.

Lisa Fair McEvers

VandeWalle, Chief Justice, concurring specially.

[¶ 20] I concur in the result in the majority opinion. I agree that the 2015 amendments to the Rate Classification Code 6208 was more than a clarification and interpretation of the 2013 and 2014 Codes and should only have prospective rather than retroactive application.

[¶ 21] However, I write separately to note that insofar as the majority opinion may be read to suggest the determination of the appropriate classification is always a mixed question of fact and law to which no deference is given to the decision of WSI, I do not agree. We were told at oral argument that there are only 141 job classifica-

tions for all jobs covered by WSI. It is apparent then, that each classification will not be precisely tailored to the job of each employee.

[¶ 22] Thus, in the instance where more than one particular job classification arguably may be appropriate, I believe we must give some deference to the experience and decision of WSI in classifying a particular job. If we do not give such deference it will be the judgment of the courts not that of WSI which will, contrary to the dictates of N.D.C.C. § 65–04–01, determine the appropriate job classification for each employee.

[¶ 23] Gerald W. VandeWalle, C.J.