**Filed 5/7/20 by Clerk of Supreme Court**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 90

State of North Dakota, by and through

Workforce Safety and Insurance,                                    Appellant

     v.

Isai Avila,                                                                            Appellee

     and

SM Fencing & Energy Services, Inc.,                            Respondent

## No. 20190386

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable James D. Gion, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

Dean J. Haas, Bismarck, ND, for appellee.

**Crothers, Justice.**

[¶1] Workforce Safety & Insurance (WSI) appeals from a district court judgment affirming the administrative law judge's (ALJ) order concluding Isai Avila was entitled to both the scheduled permanent partial impairment award for vision loss and whole body permanent partial impairment award for additional injuries to his cervical spine, facial bone, acoustic nerve, and brain. We reverse and remand.

I

[¶2] On February 11, 2015, Avila fell on ice carrying a railroad tie while employed by SM Fencing & Energy Services, Inc., and sustained injuries. He submitted a claim for benefits with WSI. WSI accepted liability for the claim and awarded benefits. In January 2017, the claim was audited by WSI relating to a permanent impairment award for vision loss. WSI issued a notice of decision awarding $34,000 for a scheduled permanent impairment injury under N.D.C.C. § 65-05-12.2(11). Avila requested reconsideration of that award. After reconsideration, WSI issued an order awarding permanent impairment benefits of $34,000 to Avila. Avila requested a hearing. The auditor reviewed the claim a second time. During that review Avila underwent a permanent impairment evaluation. The evaluation determined Avila had 29% whole body permanent partial impairment which included 16% whole body impairment for vision loss of Avila's left eye. WSI concluded under N.D.C.C. § 65-05-12.2(11) that Avila was entitled to the greater of either the scheduled impairment award or the whole body impairment award, but not both. WSI issued a notice of decision confirming no additional award of permanent impairment benefits was due. Avila requested reconsideration. WSI again denied the award of whole body permanent impairment benefits. Avila requested a hearing.

[¶3]  The sole issue at the administrative hearing was interpretation of the portion of N.D.C.C. § 65-05-12.2(11) stating, "If any of the amputations or losses set out in this subsection combine with other impairments for the same work-related injury or condition." The ALJ concluded N.D.C.C. § 65-05-12.2(11) applies to the same work-related injury or condition, and not impairments for the same work-related *incident*. Since Avila's loss of vision in his left eye was the same work-related injury or condition for which Avila received a 100 permanent impairment multiplier (PIM) scheduled injury award, the "loss of vision in left eye" component of the 29% whole body impairment must be subtracted from the award to determine Avila's additional permanent impairment benefits. The ALJ concluded the additional injuries (1% for the cervical spine, 1% for the TMJ and facial bone impairment, 1% for the acoustic nerve injury and 12% for the traumatic brain injury) are not the same work-related injury or condition as the vision loss, and N.D.C.C. § 65-05-12.2(11) is not applicable. Therefore, the ALJ determined Avila was entitled to both the scheduled impairment award for vision loss and the whole body impairment award for his additional injuries. WSI appealed to the district court. The district court affirmed.

[¶4]  WSI argues the ALJ's decision is not in accordance with the law because the plain language of N.D.C.C. § 65-05-12.2(11) requires WSI to award either the PIM under N.D.C.C. § 65-05-12.2(11), *or* the PIM allowed for the "combined rating" under the sixth edition of the AMA Guides, *whichever is higher*. WSI argues Avila is limited to the 100 PIM under N.D.C.C. § 65-05-12.2(11) because that award is greater than the combined whole body award under N.D.C.C. § 65-05-12.2(10) of 45 PIM derived from the AMA Guides resulting in 29% whole body impairment. WSI also argues that the ALJ wrongly distinguished between a work-related injury or condition and work-related incident, and that the ALJ's determination the word "incident" must be read into N.D.C.C. § 65-05-12.2(11) to support WSI's interpretation is inconsistent with Title 65 and without support in law.

[¶5]  Avila argues the ALJ correctly determined N.D.C.C. § 65-05-12.2(11) entitles him to the scheduled award for loss of vision and the whole body award

for *additional* bodily injuries to his cervical spine, facial bone, acoustic nerve, and traumatic brain injury. Avila argues N.D.C.C. § 65-05-12.2(11) is not controlling because the statute only refers to impairments for the *same* "work-related injury or condition." He argues he had one work accident but suffered different injuries, and therefore he should receive additional benefits because he was not compensated for all of his injuries under the 100 PIM schedule award.

## II

[¶6]   Questions of law, including the interpretation of a statute, are fully reviewable on appeal. *State by and through Workforce Safety & Ins. v. Questar Energy Services, Inc.*, 2017 ND 241, ¶ 7, 902 N.W.2d 757. "On appeal, we review the decision of the administrative agency, and not the decision of the district court." *Midthun v. N.D. Workforce Safety & Ins.*, 2009 ND 22, ¶ 9, 761 N.W.2d 572. We review the agency's decision in the same manner as the district court reviews an administrative agency order. N.D.C.C. § 28-32-49. Courts exercise only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178 (*citing Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 8, 747 N.W.2d 71). "Deference is not given to an independent ALJ's legal conclusions." *Mickelson v. WSI*, 2012 ND 164, ¶ 8, 820 N.W.2d 333*; see also WSI v. Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186 ("deference to the ALJ's legal conclusions, however, is not justified"). Section 28-32-46, N.D.C.C., sets forth several factors, any of which must be present to warrant the reversal of an administrative law judge's final order. In the present case the question is statutory interpretation. Therefore, we will affirm the decision of the ALJ unless the order is not in accordance with the law. N.D.C.C. § 28-32-46(1).

[¶7]   The goal of statutory construction is well established:

> "Our primary goal in statutory construction is to ascertain the intent of the Legislature. In ascertaining the Legislature's intent, we first look to the plain language of the statute and give each

3

word of the statute its ordinary meaning. We construe the statute as a whole and give effect to each of its provisions if possible. If the language of the statute is clear and unambiguous when read as a whole, we cannot ignore that language under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational."

*Shiek v. N.D. Workers Comp. Bureau*, 2002 ND 85, ¶ 12, 643 N.W.2d 721 (internal citations omitted).

[¶8]   For WSI, N.D.C.C. § 65-05-12.2(5) resolves issues of practice and interpretation by incorporating the sixth edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment."

[¶9]   At issue here is N.D.C.C. § 65-05-12.2, stating:

"A permanent impairment is not intended to be a periodic payment and is not intended to reimburse the employee for specific expenses related to the injury or wage loss. If a compensable injury causes permanent impairment, the organization shall determine a permanent impairment award on the following terms:
. . . .
11. . . . If an evaluation for the loss of an eye or for an amputation results in an award that is less than the permanent impairment multiplier identified in the following schedule, the organization shall pay an award equal to the permanent impairment multiplier set out in the following schedule:
. . . .

| For loss of: | Permanent impairment Multiplier of: |
|---|---|
| An eye | 150 |
| Vision of an eye which equals or exceeds 20/200 corrected | 100 |

4

. . . .

> If any of the amputations or losses set out in this subsection combine with other impairments *for the same work-related injury or condition*, the organization shall issue an impairment award based on the greater of the permanent impairment multiplier allowed for the combined rating established under the sixth edition of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' or the permanent impairment multiplier set forth in this subsection."

(Emphasis added.)

[¶10] Section 65-05-12.2(11), N.D.C.C., is unambiguous when read as a whole. The language in N.D.C.C. § 65-05-12.2(11) referring to the amputation or loss set out in the subsection combining "other impairments for other conditions for the same work-related injury," requires combining all impairments to arrive at a whole body impairment for the work injury so that a comparison of impairment awards under N.D.C.C. § 65-05-12.2(10) and N.D.C.C. § 65-05-12.2(11) can be done. After the comparison, WSI must pay an award based on the greater of the permanent impairment multipliers.

[¶11] The AMA Guides provide the process for calculating a combined rating. The combined values chart provide a method for combining two impairment values by locating the larger of the values on the side of the chart then reading along the bottom row until the smaller value is located. The combined value is where the column and row intersect. The process for combining two impairments is used when three or more impairment values are involved. In that calculation, the combined value from the two impairments and the third value are used to locate the combined value of all impairments. The process can be repeated indefinitely until the whole body impairment percentage is determined. If impairments from two or more organ systems are combined to express a whole person impairment, each system first must be expressed as a whole person impairment percentage.

[¶12] Here, when Avila's claim initially was reviewed by the auditor, the loss of vision was the only injury considered. The auditor calculated the loss of

5

vision impairment under the AMA Guides as 16% whole person. Under N.D.C.C. § 65-05-12.2(10), a 16% whole person impairment equates to a 15 PIM. However, N.D.C.C. § 65-05-12.2(11), awards permanent impairment benefits for certain scheduled injuries. One such scheduled injury is loss of vision. Section 65-05-12.2(11), N.D.C.C., provides a PIM of 100 for the loss of vision of an eye. Avila was awarded $34,000 based on the greater of the PIMs under N.D.C.C. § 65-05-12.2(11).

[¶13] The auditor reviewed the claim a second time. During that review, Avila underwent a permanent impairment evaluation. The evaluation determined Avila had impairments of multiple organ systems. The assessment determined Avila's permanent impairment was 16% loss of vision in the left eye, 12% for the traumatic brain injury, 1% for the cervical spine, 1% facial bone impairment, and 1% for acoustic nerve injury. Using the AMA Guides' combined values table, this equates to a 29% whole person permanent partial impairment rating. These percentages are not in dispute.

[¶14] The whole body impairment percentage determines the PIM in N.D.C.C. § 65-05-12.2(10) for calculation of the impairment award. Under N.D.C.C. § 65-05-12.2(10), a 29% whole person permanent partial impairment rating equates to a 45 PIM. Section 65-05-12.2(11), N.D.C.C., provides a PIM of 100 for the loss of vision of an eye. A 100 PIM is greater than a 45 PIM. Therefore, under N.D.C.C. § 65-05-12.2(11), Avila's award should be determined based on the greater PIM.

[¶15] Because Avila had an injury set out in N.D.C.C. § 65-05-12.2(11), he was entitled to the greater of the combined rating for all accepted impairments under the AMA Guides or the injury schedule. Here, N.D.C.C. § 65-05-12.2(11) provided the greater PIM. Accordingly, WSI correctly determined Avila's award.

## III

[¶16]  The ALJ judgment is not in accordance with the law. We reverse the district court's judgment and remand to the ALJ for further proceedings consistent with this opinion.

[¶17] Daniel J. Crothers
     Gerald W. VandeWalle
     Jon J. Jensen, C.J.
     Jerod E. Tufte
     Lisa Fair McEvers